**DON FREDRICK HANCOCK, JR.**                                   **PETITIONER**

**VERSUS**                                              **NO. 1:08cv226-HSO-JMR**

**CHRISTOPHER EPPS**                                            **RESPONDENT**

## REPORT AND RECOMMENDATION

This matter is before this Court on Petitioner Don Hancock, Jr.'s Petition [1-1] for Writ of Habeas Corpus which is accompanied by a Memorandum [3-1] in Support. The Respondent has filed a Response [7-1] to which the Petitioner filed a Rebuttal [10-1]. This Court, having been advised in the premises and having considered the entire record, including the lodged state court record, the Petition [1-1] and Memorandum [3-1] in Support, the Response [7-1], the Petitioner's Rebuttal [10-1] and all relevant law, finds that the Petitioner's Petition [1-1] for Writ of Habeas Corpus should be denied.

## STATEMENT OF THE CASE

The Petitioner was convicted of armed robbery in the Circuit Court of Harrison County, Mississippi First Judicial District and was sentenced, as a habitual offender, to serve twenty-five (25) years in the custody of the Mississippi Department of Corrections on June 23, 2005. (*See* State Court Record (S.C.R.), vol. 1, 65-66.) Subsequently, the Petitioner appealed his judgment of conviction and sentence to the Mississippi Supreme Court. On February 6, 2007, the Mississippi Court of Appeals affirmed the Petitioner's judgment of conviction and sentence. *See Hancock v. State*, 964 So.2d 1167 (Miss.Ct.App. 2007), *reh'g. denied*, June 26, 2007 (Cause No. 2005-KP-01569-COA), *see also* Ex. "A" Attach. Resp. [7-1]. The Mississippi Supreme Court denied Petitioner's petition for writ of certiorari on September 14, 2007. (*See* Ex. "B" Attach. Resp. [7-1].)

On February 25, 2008, the Petitioner filed an "Application For Leave To Proceed In Trial Court with a Petition for Post-Conviction Collateral Relief" in the Mississippi Supreme Court arguing that he received ineffective assistance of counsel, prosecutorial misconduct, and cumulative error. On March 26, 2008, the Mississippi Supreme Court denied the Petitioner's application, finding that the Petitioner's claims, with the exception of cumulative error, had been raised and dismissed on direct appeal, and therefore were procedurally barred under MISS. CODE ANN. § 99-39-21(3). (*See* Ex. "C" Attach. Resp. [7-1].) The court also found that Petitioner's cumulative error claim was without merit. *Id.*

Hancock filed the instant Petition [1-1] for a Writ of Habeas Corpus raising the following grounds for relief (as stated by petitioner):

Ground One: Fourteenth Amendment right to due process violated by prosecutor's knowing use of and failure to correct false testimony.

Ground Two: Ineffective assistance of counsel - failure to investigate or introduce into evidence information contained in discovery materials which would have exposed the state's knowing use of false testimony, resulting in a deprivation of Hancock's 6th and 14th Amendment right to effective assistance of counsel and 14th amendment right to Due Process.

Ground Three: The State Court's judgment regarding their finding of "overwhelming evidence of guilt" as it relates to each issue raised on direct appeal, Post-conviction and all issues raised here-in resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial, implicating 28 U.S.C. § 2254(d)(2).

Ground Four: Defense counsel failed to investigate or introduce into evidence information contained in discovery material which would have revealed that the clothing and shoes introduced at trial were inadmissable as these items did not appear any where on the property invoices provided to the defense, resulting in a depravation of Hancock's 6th Amendment right to the effective assistance of counsel.

Ground Five: Defense counsel provided constitutionally deficient representation by failing to argue a motion in limine that he filed one day before trial. As a result of this failure Hancock's Fourteenth Amendment right to Due Process was

violated.

Ground Six: Improper jury instruction.

Ground Seven: Cumulative Error.

(*See* Pet. [1-1].)  Presently, the Petitioner is lawfully in the custody of Ron King, Superintendent of the South Mississippi Correctional Institution in Leakesville, Mississippi.

## ANALYSIS

To the extent that Petitioner seeks an evidentiary hearing, the Court finds that the Petitioner is not entitled to an evidentiary hearing in this Court.  28 U.S.C. § 2254(e)(2) limits the authority of federal courts to hold evidentiary hearings in habeas matters.  A federal court may not grant an evidentiary hearing on claims that a habeas petitioner could have developed in state court proceedings unless several criteria are satisfied.  Either the claim must rely on a previously unavailable new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, or rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. *See* 28 U.S.C. § 2254(e)(2)(A).  Additionally, the facts underlying the claim must be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B).  Upon review of the Petitioner's arguments, this Court finds that his claims fail to satisfy either of these exceptions which would allow this Court to grant him an evidentiary hearing.

Furthermore, the decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000).  The Fifth Circuit has also stated "that when '[t]he district court ha[s] sufficient facts before it to make an informed decision on the merits of [the habeas petitioner's] claim' it does not abuse its discretion in

failing to conduct an evidentiary hearing." *Id.* (citation omitted). A federal hearing does not necessarily require live testimony. The Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims." *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

The Court finds that an evidentiary hearing is not necessary to determine the merit of Petitioner's claims in the instant Petition [1-1]. This Court has sufficient information before it to conduct a "paper hearing" regarding all of the Grounds raised by the Petitioner in his Petition [1-1]. The Court has before it not only the Petition [1-1] and Memorandum [3-1] in Support, but also the Respondent's Response [7-1], and the Petitioner's Rebuttal [10-1]. Accordingly, the Court finds that there is no need for an evidentiary hearing in this matter.

The Respondent submits, and the Court agrees, that the Petitioner's claims in Grounds One, Two, Four, Five, Six and Seven were reviewed either on direct appeal or on post-conviction review by the Mississippi Supreme Court and denied on the merits. Thus, these claims will be addressed under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The AEDPA amended 28 U.S.C. § 2254, which governs the standard of review for petitions for writs of habeas corpus filed by prisoners in state custody. The AEDPA amendments apply to all cases filed after its effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).[1] Petitioner filed his federal Petition [1-1] in this Court on June 2, 2008. Therefore, this Court will apply § 2254, as amended by the AEDPA.

The amended version of § 2254(d) governs the standard of review and provides as follows:

---

[1]This Court notes that *Lindh* effectively overrules *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied* 520 U.S. 1107 (1997), on this point. *Nobles v. Johnson*, 127 F.3d 409, 413 & n.4 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998); *Green v. Johnson*, 116 F.3d 1115, 1120 n.2 (5th Cir. 1997).

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d) (1994 ed., Supp. III).

The United States Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), explicated the level of deference required under the AEDPA amendments. The Court made a general but important point when it stated that "§2254(d)(1) places a new constraint on the power of a federal habeas Court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state Court." *Id.* at 412. More specifically, the Court addressed the two ways in which a state Court decision could be "contrary to" clearly established precedent:

> First, a state-court decision is contrary to this Court's precedent if the state Court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state Court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

The Court then discussed the standard set forth in the "unreasonable application" clause. The Court explained that issues which involve a state Court's application of law to facts (i.e., mixed questions) require a federal habeas Court to utilize an analysis derived from the AEDPA's

"unreasonable application" clause. *Id.* at 408-09. The Court summarized its "unreasonable application" clause analysis as follows: "[A] federal habeas Court may grant the writ if the state Court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of that prisoner's case." *Id.* at 413; *see also Tucker v. Johnson*, 242 f.3d 617, 621 & n.5 (5th Cir.)(quoting and following *Williams'* "unreasonable application" analysis), *cert. denied*, 533 U.S. 972 (2001). In other words, the standard under § 2254(d)(1)'s "unreasonable application" clause is whether the state-court decision was objectively unreasonable.[2]

However, the deferential standards found in the AEDPA amendment do not apply when the state Court has rejected a claim on procedural grounds or when the claim is unexhausted. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). As a threshold matter, this Court must determine whether a given determination was "on the merits," procedurally barred, or exhausted. *Drinkard*, 97 F.3d at 766. "On the merits" is a term of art that refers to whether a state-court disposition was procedural or substantive. *Green*, 116 F.3d at 1121. *Green v. Johnson* sets forth a three-factor test that speaks to this issue.[3]

In Grounds Two, Four and Five, the Petitioner raises ineffective assistance of counsel claims. These claims are:

---

[2]The Court's self-professed most important point was that the term "unreasonable,"as used in the AEDPA, connotes an objective standard–i.e., "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U. S. at 409-10 (emphasis in original). *Williams* rejects the subjective analysis offered in *Drinkard*, 97 F.3d at 767-768, in favor of an objective standard. *Id.* at 410; *see also Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(recognizing rejection of *Drinkard's* subjective reading of the AEDPA).

[3]In making the determination whether a resolution was on the merits, a court should consider the following factors: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination of the merits. *Id.*

Ground Two: Ineffective assistance of counsel - failure to investigate or introduce into evidence information contained in discovery materials which would have exposed the state's knowing use of false testimony, resulting in a deprivation of Hancock's 6th and 14th Amendment right to effective assistance of counsel and 14th amendment right to Due Process.

Ground Four: Defense counsel failed to investigate or introduce into evidence information contained in discovery material which would have revealed that the clothing and shoes introduced at trial were inadmissable as these items did not appear any where on the property invoices provided to the defense, resulting in a depravation of Hancock's 6th Amendment right to the effective assistance of counsel.

Ground Five: Defense counsel provided constitutionally deficient representation by failing to argue a motion in limine that he filed one day before trial. As a result of this failure Hancock's Fourteenth Amendment right to Due Process was violated.

(*See* Pet. [1-1].)

On post-conviction review and direct appeal, the Mississippi Supreme Court, found that the Petitioner's claims failed to satisfy the two-pronged test of *Strickland*. *See Hancock*, 964 So.2d at 1174-79; *see also* Exs. "B," "C" Attach. Resp. [7-2]. The United States Supreme Court announced its two-prong test for ineffective assistance of counsel claims in *Strickland v. Washington*:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984). The Defendant must satisfy both prongs by a preponderance of the evidence. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999). If the Court finds against the Defendant on either element, then the petition for the writ may be

denied on the Petitioner's ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697.

Under the deficiency prong of the test, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). "Our scrutiny of counsel's performance is 'highly deferential' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir.1986).

To prove prejudice, a defendant must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert denied* 116 S.Ct. 557 (1995); *Lockhart v. Fretwell* , 506 U.S.364, 369 (1993); *Sharp v. Johnson,* 107 F.3d 282, 286 n.9 (5th Cir. 1997). To meet the prejudice prong, a defendant must affirmatively prove and not merely allege prejudice. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.) *cert denied*, 476 U.S. 1143 (1986). There is no constitutional entitlement to error free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981) *cert denied*, 456 U.S. 949 (1982).

Counsel's performance is considered deficient if "it falls below an objective standard of

reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. The Court must determine whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In scrutinizing counsel's performance, the Court must make every effort to "eliminate the distorting effects of hindsight," and will not assume that counsel's performance is deficient merely because the Court disagrees with trial counsel's strategy. *Id.* (citations omitted).

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds). Furthermore, the test for federal habeas purposes is not whether the petitioner made the showing required under *Strickland*. Instead, the test is whether the state court's decision, that the petitioner did not satisfy *Strickland*, was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his ineffective assistance of counsel claim. *See Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

In Ground Two, the Petitioner argues that defense counsel was ineffective by failing to adequately investigate or introduce evidence that would have exposed alleged use of false testimony by the State. Petitioner asserts that Detective Adam Cooper falsely testified that Petitioner confessed to the crime of armed robbery and confessed that the money found on Petitioner's person was obtained from the armed robbery. Detective Cooper's relevant trial

testimony is as follows:

> Prosecutor: Now, at some point, and I believe it was on December the 16th of 2003, which would have been six days after the robbery, correct?
>
> Det. Cooper: Yes.
>
> Prosecutor: Did you have occasion to speak with Mr. Hancock?
>
> Det. Cooper: Yes, I did.
>
> Prosecutor: And had Mr. Hancock at that time been advised of what is known as his Miranda rights?
>
> Det. Cooper: Yes, he was.
>
> Prosecutor: And let me ask you specifically, did you question him with regard to where he had obtained any monies that he might have?
>
> Det. Cooper: Yes, I did.
>
> Prosecutor: And what was his response?
>
> Det. Cooper: That that related to what he was charged with.
>
> Prosecutor: And did he make any other statements with regard to what he had done with regard to this charge?
>
> Det. Cooper: He advised he had only done what he was charged with.

(S.C.R. vol. 3, 171-72.)  Upon being recalled by the State, Det. Cooper further testified:

> Prosecutor: What did Mr. Hancock tell you about the money he had?
>
> Det. Cooper: It was from what we had spoken about.
>
> Prosecutor: Which was this charge?
>
> Det. Cooper: Armed robbery.  Yes.

*Id.* at 224.

Petitioner claims this testimony is false and that a "synopsis" of his statement and "supplemental narrative" prepared by Detective Cooper proves such.  Petitioner claims the "synopsis" and "supplemental narrative" were provided to him and his defense counsel by the

State through discovery prior to trial.[4]  The Court notes, however, that Plaintiff's reliance on the "synopsis" of his statement as evidence of Detective Cooper's alleged false testimony is ill-fated, as the "synopsis" is clearly a recap of Petitioner's statement given to officers on the day of his arrest, December 11, 2003. ( *See* Ex. "3" Attach. App. I Pet. [3-2] 18.)  Detective Cooper's testimony at trial unmistakably reflects a conversation he had with Petitioner five (5) days later on December 16, 2003. (S.C.R. vol. 3, 171.)  Thus, the "synopsis" has no bearing on Detective Cooper's testimony at trial.

As to the "supplemental narrative," it is one page of the Gulfport Police Department's investigative report dated May 19, 2004, and it appears to have been prepared by Detective Cooper. (*See* Ex. "4" Attach. App. I Pet. [3-2] 19.) Among other brief declarations, it contains the following relevant passage:

> Hancock never confesses to the robbery, but only states later he had confessed.  During his second interview he refuses to speak of the matter only speaking of the narcotics which he purchased.  Det. Cooper addresses to Hancock during the interview that he was panhandling by his own admission on the morning of the robbery, and then purchasing $4500.00 in narcotics later in the day.  Hancock only states that it is related to the other charge, but did not wish to speak of it, wanting to speak with the FBI.  The FBI did speak with Hancock, but not reference his current charge due to his appointment of an attorney.  Hancock tells the FBI that he confessed to the robbery and that he did not commit any other robberies.

*Id.*  Petitioner asserts this passage is proof that Detective Cooper committed perjury when he testified at trial.  However, again, Petitioner's conclusion draw from this passage is misplaced.

---

[4]The Court notes that the Mississippi Court of Appeals denied Petitioner's attempt to include in the record the "synopsis" and "supplemental narrative" on direct appeal, and thus they were not a part of the record before the state court on appeal.  Petitioner, in his present habeas action has not properly filed a motion seeking permission from this Court to expand the federal habeas record to include exhibits not considered by the state courts, but Respondent has not objected to Petitioner's use of the "synopsis" or "supplemental narrative."  The Court, without so holding the federal habeas record expanded pursuant to Rule 7 of the Rules Governing Section 2254 Cases or 28 U.S.C. §2254(e) but for the benefit of clarity, will discuss the "synopsis" and "supplemental narrative" supplied by Plaintiff.

Nowhere in the above passage of the "supplemental narrative" does Detective Cooper state on what date this interview took place, nor does it state, for that matter, how many interviews were being discussed in the narrative. The first sentence states that, at some point in time, whenever that might have been, Petitioner would not confess to the robbery. However, the sentence goes on to affirm that Petitioner "had [previously] confessed." This sentence, coupled with the fact that the narrative is dated May 19, 2004, lends support to Detective Cooper's testimony that Petitioner had confessed on December 16, 2003, six (6) days after the armed robbery. Furthermore, the paragraph contains the sentence claiming that Petitioner informed the FBI that he had previously confessed to the robbery. While the narrative does reference Petitioner's refusal to discuss the robbery at some point in time, it does not support the accusation that Petitioner did not confess to Detective Cooper on December 16, 2003.

Petitioner has not overcome the presumption that is afforded his trial counsel's trial strategy and decision not to present Detective Cooper's "supplemental narrative" at trial. *See, e.g., Williams v. Cain*, 125 F.3d 269, 278-79 (5th Cir. 1997) ("[F]ailure to present... evidence would not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise."). Nowhere in the "supplemental narrative" does it state that on December 16, 2003 Petitioner did not confess to armed robbery. In fact, the narrative twice references a confession to the armed robbery by Petitioner. Also, the narrative mentions Petitioner's participation in illegal narcotic activity. Without clearly contradictory evidence of Petitioner's December 16, 2003 confession found in the narrative, it was entirely reasonable trial strategy for trial counsel not to present the narrative at trial so as to avoid exposing the jury to Petitioner's involvement

in illegal narcotic activity.[5]  This Court fails to find any basis on which to conclude that Detective Cooper committed perjury at trial, and thus, Petitioner's trial counsel could not have been deficient in failing to reveal Detective Cooper's allegedly false testimony.

Even if this Court were to assume that Petitioner's trial counsel was deficient in not bringing to light at trial Detective Cooper's potentially conflicting testimony, Petitioner still must prove he was prejudiced.  To prove prejudice for ineffective assistance of counsel purposes, a petitioner must demonstrate that his counsel's assistance was so deficient as to undermine confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694.  This means that, under the AEDPA, Petitioner must show that the state court was unreasonable in concluding that, assuming a dereliction of duty on the part of trial counsel, the outcome of Petitioner's trial is reliable.  The Fifth Circuit has held "a failure to establish *either* requirement [of the Strickland test] necessarily defeats the claim" of ineffective assistance of counsel. *Lincecum v. Collins*, 958 F.2d 1271, 1278 (5th Cir. 1992) (emphasis added).

This Court finds that Petitioner has failed to show a reasonable probability that but for his trial counsel's failure to introduce into evidence the "supplemental narrative" or present Detective Cooper's allegedly conflicting statements he would have been found not guilty of armed robbery.  Assuming the narrative did contradict Detective Cooper's testimony and was evidence that Petitioner did not confess to the robbery on December 16, 2003, the record is replete with other evidence presented at trial demonstrating Petitioner's guilt.  A photograph of

---

[5] The Court notes that Petitioner never alleged at trial that the $805.00 found on his person at the time of his arrest was obtained through narcotic activity. (S.C.R. vol. 3, 232.)  Thus, it was clearly not Petitioner's trial strategy to assert that he could not have committed the armed robbery because he was engaged in illegal narcotic activity, as expounded in his December 11, 2003 statement to police officers in which Petitioner relies. (*See* Ex. "3" Attach. App. I Pet. [3-2] 18.)

the bank robber was taken by a surveillance camera inside the bank and Petitioner was positively identified as the bank robber in that photograph by Karen Ramsey, his apartment leasing agent, and Cynthia Curtis, his apartment manager. (S.C.R. vol 2, 137-48.) The day after the robbery, the surveillance photograph was published in the SunHerald newspaper and upon seeing the image Ramsey immediately recognized the robber as being the Petitioner and called the police. *Id.* at 137-38, 147. Furthermore, upon being shown the surveillance photograph by police, Petitioner's own mother identified her son, Petitioner, as the robber. (S.C.R. vol. 3, 168, 293, 298.) Also, at the time of the robbery, Thomas Nave witnessed a man run out of the bank, jump a fence and run towards a truck that "look[ed] very much like" and "appear[ed] to be" Petitioner's truck. (S.C.R. vol.2, 106-09, 144; *see also* S.C.R. vol. 3, 164, 168.) Further, the arresting officer stated that upon seeing Petitioner exit a hotel room, he "recognized him from the bank photograph." (S.C.R. vol. 3, 189.) The Court also notes that the jury was presented with the bank surveillance photographs so as to make their own determination as to whether Petitioner was the robber or whether he could be identified from the surveillance photographs. (S.C.R. vol. 2, 76, 82-87.) Lastly, the Court notes that Matthew Burel, an inmate that was incarcerated with Petitioner, testified that Petitioner had confessed to him that he committed the armed robbery. (S.C.R. vol. 3, 230.) This Court finds that Petitioner has failed to establish his claim for ineffective assistance of counsel in Ground Two.

In Ground Four, Petitioner argues that defense counsel was ineffective due to counsel's failure to argue that the clothes and shoes introduced as evidence at trial were not contained in the property invoices provided to the defense. During the State's case-in-chief, Detective Sean Dunagan testified that he was one of the officers that searched Petitioner's truck after the arrest. Dunagan identified four items of clothing that were found during the search of Petitioner's truck,

and without objection the State admitted into evidence a pair of brown shoes, a Henley style shirt and a blue Hanes T-shirt. However, when the State attempted to admit into evidence a pair of blue jeans, the final article of clothing, Petitioner's trial counsel objected based upon the claim that the jeans were not mentioned on an evidence list provided by the State during discovery. After argument, the trial judge sustained Petitioner's objection based on the fact that the jeans were not listed on an evidence list or property invoice provided during discovery. During argument, Petitioner's trial counsel stated that he did not see the shoes or Henley style shirt on any evidence lists either. Petitioner claims failure to object to the introduction of those items as well was ineffective assistance of counsel.

Addressing this claim, the Mississippi Court of Appeals found that "[e]ven without the introduction of the clothes, the record is replete with evidence of Hancock's guilt... Based upon the overwhelming evidence against Hancock, we cannot say that absent the introduction of the clothing the result of the trial would have been different. As such, this issue is without merit." *Hancock*, 964 So.2d at 1178. Respondent submits, and this Court agrees, that Petitioner has not shown that the introduction of the clothes was prejudicial and his trial would have been decided differently without the introduction.

As previously stated, the Fifth Circuit has held "a failure to establish *either* requirement [of the Strickland test] necessarily defeats the claim" of ineffective assistance of counsel. *Lincecum*, 958 F.2d at 1278 (emphasis added). Assuming, *arguendo*, that Petitioner's trial counsel was deficient for not getting the shirts and shoes excluded as evidence, Petitioner must still show that this deficiency resulted in prejudice. The Court finds that Petitioner has failed to prove that the jury's verdict of guilty is unreliable. As discussed *supra*, the trial record contained several other pieces of evidence of Petitioner's guilt. Petitioner was identified as being the

robber in the bank surveillance photographs by several individuals, including his mother. Petitioner's truck matched the description of the truck that was seen parked behind the bank. An inmate that was previously incarcerated with Petitioner testified that Petitioner had confessed to him. Also, Jennifer Taylor, an escort employed by Petitioner, testified that Petitioner's appearance before the robbery matched the bank photos and that Petitioner had changed his appearance the day after the robbery occurred by shaving his beard and mustache. (S.C.R. vol. 3, 216-17.) Lastly, Detective Cooper testified that Petitioner stated he had committed the robbery. Exclusion of the shirts and shoes found in Petitioner's truck does not undermine in any way the overwhelming evidence of Petitioner's guilt. Therefore, even if defense counsel's performance was deficient, there was no prejudice, and there is no basis for granting federal habeas relief as to Petitioner's claim in Ground Four.

In Ground Five, Petitioner argues that his trial counsel was ineffective for failing to argue a motion in limine to prevent witnesses from mentioning his prior criminal conduct. The testimony that Petitioner claims could have been prevented by his trial counsel arguing the motion in limine came from State's witness Matthew Burel, an inmate formerly incarcerated with Petitioner. At trial, Burel testified during direct examination by the State:

| | |
|---|---|
| Prosecutor: | All right. Did he tell you anything about the armed robbery charge? |
| Burel: | That he did it and that as long as he could, his retirement will come out of the end of a gun barrel. |
| Prosecutor: | All right. Tell me what he told you about the armed robbery, about this one in December of 2003. |
| Burel: | He explained how he did it, that he's got experience with the bank robberies from his prior record. |
| Defense: | Your Honor, I object. |
| Court: | Sustained. |

(S.C.R. vol. 3, 230.) At the conclusion of Burel's direct-examination, Petitioner's trial counsel moved for a mistrial based on Burel's testimony. *Id.* at 236-38. The court denied the motion, and noted that Burel made no specific reference to any of Petitioner's prior convictions, arrests or charges and that the jury could draw their own inferences about what "prior record" really meant. *Id.* The Mississippi Court of Appeals agreed with the trial court and held that:

> [S]uch testimony is ambiguous at best in the eyes of most jurors. 'Where the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs.' *Hobson v. State*, 730 So.2d 20 (P10) (Miss. 1998). Burel made no mention of any specific prior convictions or crimes, but only made reference to Hancock's experience. As the statement did not educate the jury on Hancock's criminal history, it could not have tainted the juror's view of the overall case against Hancock, and, as such, did not prejudice his defense. Therefore, even assuming [trial counsel] was deficient in failing to argue the motion in limine, Hancock has failed to show any prejudice as a result.

*Hancock*, 964 So.2d at 1179.

Respondent submits that any argument of the motion in limine would have been in addition to the rules by which the trial court was already governed. Specifically, Respondent cites Mississippi Rule of Evidence 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.

Respondent claims any argument would have been redundant of the rules by which the court was already regulated, and moreover, the statement was not offered to show Petitioner's conformity with a criminal character, but was merely an unsolicited statement of the witness' response to a question about what the Petitioner said to him. Respondent notes that the State was not eliciting testimony from Burel about Petitioner's prior criminal acts. Respondent argues thus there is no deficiency on the part of trial counsel. This Court agrees.

There is no evidence to indicate that any argument of the motion in limine by trial counsel would have prevented this unsolicited statement from Burel. The prosecutor was clearly seeking testimony from Burel about what Petitioner had told him concerning the armed robbery that occurred in December of 2003. Burel gave an unsolicited statement that Petitioner had experience from his prior record. Petitioner's trial counsel promptly objected to the testimony, which was sustained, and Burel was instructed, outside the presence of the jury, to limit his testimony to the robbery on December 10, 2003. (S.C.R. vol. 3, 230, 238.) Also, trial counsel moved for a mistrial based on Burel's testimony, which was denied. The Fifth Circuit has held, in criminal trials, that "fleeting, unexplained reference" to other crime, in violation of FED. R. EVID. 404(b), was "obviously not reversible error." *United States v. Webster*, 750 F.2d 307, 336 (5th Cir. 1984), *cert. denied*, 471 U.S. 1106, 85 L. Ed. 2d 855, 105 S. Ct. 2340 (1985). The record does not demonstrate any deficiency on the part of Petitioner's trial counsel.

Assuming, *arguendo*, that trial counsel was deficient, this Court finds that Petitioner cannot establish the prejudice prong of *Strickland*. The jury heard no testimony about any specific prior offenses, charges, or convictions. Because the jury never heard any evidence of specific offenses during the trial, Petitioner cannot show that Burel's testimony infected the trial with unfairness or prejudiced his defense. Based on the record, there is a lack of any evidence for holding that there is a "reasonable probability" that, but for the alleged errors of trial counsel, Petitioner's trial would have been decided any differently. The Mississippi Court of Appeals decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Furthermore, in federal habeas review, the admission of evidence of the defendant's prior crimes is subject to harmless error analysis. *Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir.

2007). Thus, Petitioner is not entitled to habeas relief unless he can demonstrate that the admission of evidence of his prior crimes "had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* Burel's testimony did not mention any specific prior offenses, charges or convictions to have been committed by Petitioner. Furthermore, the line of questioning by the State that caused Burel to mention Petitioner's "prior record" was not intended to culminate in a discussion of Petitioner's prior crimes but was to establish what Petitioner had told Burel concerning the December 2003 robbery. (S.C.R. vol. 3, 230.) Also, the prosecutor did not elicit any further testimony from Burel about Petitioner's prior crimes. Lastly, the evidence against Petitioner presented at trial, discussed throughout in Grounds Two and Three, was overwhelming. This Court finds that any influence Burel's remark made on Petitioner's presumption of innocence can only amount to harmless error. *See Dorsey*, 494 F.3d at 531 (holding that a habeas petitioner is not entitled to relief unless evidence of his prior crimes "had a substantial and injurious effect of influence in determining the jury's verdict.").

Based on the foregoing analysis, the Court finds that the Petitioner is not entitled to habeas relief as it relates to any of his ineffective assistance of counsel claims. Accordingly, all of Petitioner's ineffective assistance of counsel claims contained in Grounds Two, Four and Five should be denied.

In Ground One, Petitioner argues that the State committed prosecutorial misconduct by eliciting false testimony from Detective Cooper. This testimony was discussed in detail above in Ground Two. The known solicitation of false testimony by the State may constitute a violation of due process. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972). The Fifth Circuit has previously explained regarding the use of misleading evidence:

To establish a due process violation based on the State's knowing use of false or misleading evidence, [a habeas petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is false if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief. False evidence is material only if there is any reasonable likelihood that [it] could have affected the jury's verdict.

*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (internal citations and quotation marks omitted). As discussed *supra* in Ground Two, Petitioner has failed to establish that Detective Cooper's testimony was false. The record does not show proof of false testimony or any misconduct on the part of the prosecutor. Petitioner has failed to meet his burden.

In Ground Six, Petitioner argues that the trial court erred in allowing "an improper and misleading" jury instruction, S-2. Specifically, Petitioner claims the Mississippi Court of Appeals erred when it concluded that the giving of instruction S-2 at trial was harmless error. (*See* Pet.'s Mem. [3-1] 53-55.) Jury instruction S-2, as given by the trial court states "the Court instructs the Jury that it is not necessary that the State either recover or produce at trial the weapon alleged to have been used by the Defendant in this case." (S.C.R. vol. 1, 48.) On Petitioner's direct appeal, the Mississippi Court of Appeals found that the instruction was an impermissible comment on the evidence in violation of MISS. CODE ANN. § 99-17-35, but that the error was harmless. The court addressed this issue:

Hancock claims that jury instruction S-2 should not have been given as it spoke to the weight of the evidence and implied that a gun was unimportant to the State's case. Generally, the trial court should not comment on specific evidence, or the weight of said evidence, in the instructions given to the jury. *Miss. Code Ann. 99-17-35 (Rev.2000)*. Additionally, it is well settled that "[a]n instruction which is on the weight of the evidence or which singles out and gives undue prominence to certain portions of the evidence is erroneous." *Bester v. State*, 212 Miss. 641, 647, 55 So.2d 379, 381 (1951); *see also Duckworth v. State*, 477 So.2d 935, 938 (Miss.1985) (stating that jury instructions should not comment on or single out specific evidence).

...

The language of *Mickell [v. State, 735 So.2d 1031 (Miss. 1991)]* makes it clear that the instruction at issue has been deemed an impermissible comment on the evidence, and, as such, the trial court erred in allowing the instruction over objection. However, the facts of *Mickell* are distinguishable from the case sub judice and any resultant error stemming from the inclusion of instruction S-2 was harmless.

The supreme court has stated that "an error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." *Kolberg v. State*, 829 So.2d 29 (P34) (Miss. 2002) (quoting *Carlton v. State*, 425 So.2d 1036, 1040 (Miss. 1983)). Error has also been deemed harmless "if it is clear beyond a reasonable doubt that it did not contribute to the verdict." *Conley v. State*, 790 So.2d 773 (P72) (Miss. 2001) (citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed. 2d 705 (1967)).

In *Mickell*, that a gun was never found by law enforcement was a central issue to the case as Mickell took the stand in his defense and testified that the did not even own a gun and the jury was instructed on the lesser offense of robbery.... The jury in this case was presented with direct, *uncontradicted* testimony from Shelby, the bank teller, that the robber had a gun during the robbery. That no one else testified to the presence of the gun during the robbery is of no moment. Additionally, Hancock's counsel withdrew an instruction that would permit the jury to find Hancock guilty of simple robbery. Furthermore, evidence of Hancock's participation in the crime was substantial.... As the evidence against Hancock was such that no fair minded juror could have arrived at any verdict other than guilty, this issue is without merit.

*Hancock*, 964 So.2d at 1172-74.

Generally, challenges to jury instructions may not form the basis for federal habeas corpus relief. *See Gilmore v. Taylor*, 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71 (1991). Habeas relief will not be granted unless a petitioner establishes that an improper instruction rose to the level of a constitutional violation. *Taylor*, 113 S.Ct. At 2121, 124 L.Ed.2d at 322. The Petitioner is required to show that the erroneous instruction so infected the entire trial that the subsequent conviction violates due process. *See Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999). Moreover, "the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the

trial record." *See Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999). Also, the Court must determine whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a "way that violates the Constitution." *Id.* Furthermore, any errors are subject to harmless-error analysis under *Brecht*.[6] *Galvan v. Cockrell*, 293 F.3d 760, 765 (5th Cir. 2002). In a habeas proceeding, *Brecht* holds that a constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

It is the Mississippi Court of Appeals' determination that the error in admitting instruction S-2 was harmless that is to be reviewed herein under § 2254(d). *See Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2326, 168 L. Ed. 2d 16 (2007) ("In *Mitchell v. Esparza*, 540 U.S. 12, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (*per curiam*), we held that, when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless that harmlessness determination itself was unreasonable.). Relief is available in a habeas corpus proceeding on a due process claim premised on a state court error if the error "had substantial and injurious effect or influence" on the outcome of the case. *Brecht*, 507 U.S. at 637. Accordingly, in assessing the reasonableness of the state court's application of the harmless error review, it must be determined whether the alleged erroneous jury instruction had a substantial and injurious effect on the verdict.

Here, the Mississippi Court of Appeals concluded, and this Court is in no position to

_____

[6]The Fifth Circuit has found that the principles embodied in AEDPA, which was enacted after *Brecht*, are fully consistent with *Brecht's* standard for harmless error and with *Brecht's* observations concerning the limited role of the federal courts in habeas cases. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003). Therefore, the Fifth Circuit has held that, "in cases governed by AEDPA, federal habeas courts should continue to analyze the harmlessness of all state court decisions involving a constitutional 'trial' error according to the *Brecht* standard. *Id.* at 306-07.

disagree, that the trial court erred in giving jury instruction S-2. The Mississippi Court of Appeals' subsequent conclusion that the erroneous instruction was harmless is not unreasonable upon the record. Shelby, the bank teller, testified that she was robbed at gunpoint and she identified in two (2) bank surveillance photographs where and how the robber was holding the gun. She also identified the gun as being an automatic handgun, likely a .22 or .25 caliber handgun. (S.C.R. vol. 2, 81-83.) Petitioner's trial counsel did not challenge Shelby's testimony on cross-examination, nor did he call any witnesses or elicit any testimony to refute her claim. Furthermore, no one testified that a gun was not used in the robbery, and no one testified that Petitioner did not own a gun. Petitioner asserts the bank surveillance photographs contradict Shelby's testimony.[7] (*See* Pet. Mem. [3-1] 54-55.) However, no witness stated that a gun could not be seen in the photographs, and, in fact, the only witness to use the photographs to discuss the presence of a gun was Shelby, and she pointed out to the jury in detail in two (2) different photographs where the gun was located and how the robber was displaying the gun for her to see. (S.C.R. vol. 2, 76, 82, 86.) According to the Mississippi Court of Appeals,

> The jury in this case was presented with direct, *uncontradicted* testimony from Shelby, the bank teller, that the robber had a gun during the robbery... Furthermore, evidence of Hancock's participation in the crime was substantial. While no bank employees or customers were able to identify Hancock in court, those that knew him immediately identified him from bank surveillance photos. The leasing agent of the apartment complex where Hancock had lived for a time recognized Hancock from a photo printed in a newspaper and the apartment manager verified that Hancock drove a dark colored truck. When Cooper visited Hancock's mother she looked disappointed when she saw the bank photo and said that it looked like her son. This identification was echoed by Hancock's brother as well. Taylor testified that she was with Hancock before and after the robbery.

---

[7] The Court notes that it does not have the original bank surveillance photographs to review, but that it does have what appears to be photocopies of some of the surveillance photographs admitted into evidence at trial. (*See* Exs. "10-17" Attach. Pet. App. I Mem. [3-2].) Due to the poor quality of the images presented, the Court notes that the photographs are ambiguous on the issue of whether or not a gun was used in the robbery.

She continued that he had a moustache before December 10 but when she saw him the day after the robbery he was clean shaven. Additionally, she testified that he had a significant amount of money the day after the robbery and was generous enough to buy her clothes and offer a fifty percent tip for her services. This pecuniary wherewithal is in stark contrast to his apparent financial situation days before the robbery. Ramsey, the leasing agent at Hancock's apartment, testified that he was two months late on his rent and the power to his apartment had been disconnected. Many of these facts were verified by Burel, Hancock's jailhouse confidant. Lastly, and most revealing, Hancock himself admitted that the money found in his possession when he was arrested at the Broadway Inn came from the robbery and, even more detrimental to Hancock's case, that he actually committed the robbery. As the evidence against Hancock was such that no fair minded juror could have arrived at any verdict other than guilty, this issue is without merit.

*Hancock*, 964 So.2d at 1174. This analysis by the Mississippi Court of Appeals as to the sufficiency of the evidence supports its determination that the introduction of instruction S-2 was harmless. The central issue in Petitioner's criminal trial was not whether a gun was used but was whether or not Petitioner was the one that committed the robbery. The trial court's instruction that the State did not have to produce the weapon to allegedly have been used in the robbery did not have any likely effect in the jury's verdict; even though a gun was never recovered, no evidence was presented that a gun was not used in the robbery. (S.C.R. vol. 3, 297.) Therefore, the Mississippi Court of Appeals decision was not contrary to or an unreasonable application of the harmless error standard of *Brecht*. Thus, under § 2254(d), no relief is available to Petitioner on this claim.

In Ground Seven, Petitioner argues that the cumulative errors in his trial deprived him of his right to due process. The Court notes that cumulative error has been recognized as an independent basis for habeas relief, but only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the

resulting conviction violates due process.'" *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (*citing Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992)). In evaluating the sufficiency of a cumulative error charge, meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. *Derden*, 978 F.2d at 1461.

The Petitioner presented this claim to the Mississippi Supreme Court in his motion for post-conviction review. The court found Petitioner's cumulative error claim to be without merit. (*See* Ex. "C" Attach. Resp. [7-1].) The Respondent argues, and the Court agrees, that all of the Petitioner's claims lack merit. Thus, no support to the cumulative error charge can be found. The Petitioner fails to show that any of the alleged errors, which are properly before this Court for habeas review, cast any doubt upon whether the verdict satisfied due process. Accordingly, the Court finds that the Mississippi Supreme Court's decision regarding this issue was not contrary to clearly established federal law, nor did it involve an unreasonable application of clearly established federal law. Thus, the Petitioner is not entitled to habeas relief for his claim in Ground Seven.

Lastly, the Respondent submits, and the Court agrees, that the claim raised by Petitioner in Ground Three of his present Petition [1-1] has not been presented to the State's highest court in a procedurally proper manner. Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "Appellants seeking federal habeas relief under §2254 are required to exhaust all claims in state court prior to requesting federal collateral relief." *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). To satisfy the exhaustion requirement, a federal habeas applicant must generally present his claim to the state's highest court in a procedurally proper manner, and provide the high state court with a fair opportunity to pass on the claim. *Nobles v. Johnson*, 127,

F.3d 409, 420 (5th Cir. 1997); *Carter v. Estelle*, 677 F.2d 427, 442-44 (5th Cir. 1982). Only after the Mississippi Supreme Court has been provided with a fair opportunity to review a petitioner's claim in a procedurally proper manner can he be said to have satisfied the exhaustion requirement. The exhaustion requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998); *see also Nobles v. Johnson* 127 F.3d 409, 420 (5th Cir. 1997).

However, Respondent posits that Hancock cannot now meet the exhaustion requirement and has procedurally defaulted his claim in state court by failing to seek appellate review. Furthermore, Petitioner's claim is likely barred from Post-Conviction Relief in state court as it would most likely be dismissed as a second or successive application. Mississippi's Post-Conviction Collateral Relief Act, § 99-39-27(9) states, in relevant part, that "[t]he dismissal or denial of an application under this section is a final judgment and shall be a bar to a second or successive application under this article." MISS. CODE ANN. § 99-39-27(9). Therefore, Respondent submits, and this Court agrees, that there is no opportunity available for Petitioner to present his claim to the state court in which such claim would be deemed procedurally proper. Consequently, Petitioner has "technically exhausted" his claim in the instant petition and this claim is considered to be procedurally defaulted. *See Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998) (citations and internal quotation marks omitted) ("[W]hen federal habeas claims are technically exhausted because, and only because, [petitioner] allowed his state law remedies to lapse without presenting his claims to the state court...[,] there is no substantial difference between nonexhaustion and procedural default."); *see also Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) ("If a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the

exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief.").

Procedural default of a federal claim in state court bars federal habeas review of that claim unless the petitioner can show "cause" for the default and "prejudice" attributable thereto, *Murray v. Carrier*, 477 U.S. 478, 485 (1986), or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Id.* at 495. Petitioner concedes that his claim in Ground Three in the present Petition was not presented to the Mississippi courts under its own separate heading. (*See* Rebuttal [10-1] 8.) However, Petitioner claims that it was argued throughout his Brief in Support of Motion for Post-Conviction Collateral Relief. *Id.* Further, Petitioner agrees to eliminate Ground Three from his present Petition as it is encompassed in his remaining grounds for relief. *Id.* at 9. Petitioner states:

> Not withstanding the fact that Hancock did argue this claim to the highest State Court by incorporating the argument into an ineffective assistance of counsel claim, Hancock agrees to have ground # three (3) removed and deleted as a seperate [sic] ground for relief in this Petition and he will instead incorporate this claim into the remaining grounds in the Petition, just as was done in the motion for post-conviction in this case.

*Id.* Regardless of Petitioner's withdrawal of Ground Three, he has not fairly presented his claim to the state courts and therefore fails to satisfy the exhaustion requirement. *See Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). Therefore, unless Petitioner qualifies under one of § 2254(b)'s narrow exceptions: "cause and actual prejudice" or "miscarriage of justice," his claim in Ground Three should be dismissed. *See* 28 U.S.C. § 2254(b)(1)(B).

To prove "cause" Petitioner must establish that some "external force" impeded the defense's efforts to comply with the procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Petitioner maintains that his claim in Ground Three was put forth in his post-conviction

motion, therefore, he does not advance an argument as to why he did not comply with the procedural rule. Also, Petitioner withdraws Ground Three from his present Petition. Thus, Petitioner has not offered any argument that a genuine external force caused the procedural violation. *See Murray*, 477 U.S. at 488 ("external forces" include, inter alia, objective factors external to the defense that impeded counsel's compliance or "some interference by officials [that] made compliance impractical").

In addition to cause, Petitioner must show "actual prejudice" to overcome the procedural bar. *See Coleman*, 501 U.S. at 750. A showing of prejudice requires the petitioner to prove not merely that the omission created a possibility of prejudice, but that it worked to his actual and substantial disadvantage. *See United States v. Frady*, 456 U.S. 152, 170 (1982); *Russell v. Collins*, 944 F.2d 202, 205 (5th Cir.), *cert. denied*, 501 U.S. 1278 (1991). However, "absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (citing *Saahir*, 956 F.2d at 118).

Petitioner also cannot establish that procedural default would occasion a miscarriage of justice. The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him. *See Coleman*, 501 U.S. at 750; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995). To meet this test, Petitioner needed to supplement his constitutional claim with a colorable showing of factual innocence, i.e., "a fair probability that, in light of all the evidence, including that... evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992) (citations and quotations omitted); *see also Callins v. Johnson*, 89 F.3d 210, 213-214 (5th

Cir. 1996) ("This miscarriage of justice exception is concerned with actual as compared to legal innocence[.]") To establish the requisite probability that he was actually innocent, Petitioner must support his allegations with new, reliable evidence that was not presented at trial. *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) Essentially, Petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted. *Id.* However, Petitioner has not offered any new evidence that was not capable of being presented at trial, nor has he even sufficiently raised a "factual innocence" argument. Hancock asserted in his Petition, in Ground Three, that:

> The state court's judgment regarding their finding of "overwhelming evidence of guilt" as it relates to each issue raised on direct appeal, post-conviction and all issues raised here-in resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at trial, implicating 28 U.S.C. § 2254(d)(2).

(*See* Pet. [1-1] 9.) Petitioner disagrees with the Mississippi Court of Appeals' decision that sufficient evidence was present to find him guilty of armed robbery. However, Petitioner simply has not shown that, as a factual matter, he did not commit the crime of Armed Robbery. *See Fairman*, 188 F.3d at 644.

Indeed, sufficient evidence was presented at trial to find Petitioner guilty of Armed Robbery. Shelby, the bank teller, testified that she was robbed at gunpoint. (S.C.R. vol. 2, 81.) She stated that a "kind of heavyset" white male with dark hair, a mustache, dark sunglasses and a hat pointed an automatic handgun at her and demanded the money. *Id.* at 81-83. She testified that the handgun was likely a .22 or .25 caliber handgun and it was small enough to fit inside the robber's hand with only the barrel visible. *Id.* Bank surveillance cameras captured images of the robber inside the bank and at Shelby's window. *Id.* at 82. Shelby pointed out to the jury on

State's Exhibit 1, a bank surveillance photograph, in which of the robber's hands the handgun was located. *Id.* at 76, 82. Also, Shelby testified that State's Exhibit 5, another bank surveillance photograph, shows the robber displaying the handgun for her to see. *Id.* at 86. On cross-examination, defense counsel never challenged Shelby's testimony that she was robbed at gunpoint. 89-90. Shelby, however, could not identify Petitioner in the courtroom as the robber. *Id.* at 89. She stated "[t]o be honest with you, without his disguise, I don't recognize him," and in regards to "disguise" she stated she meant "[t]he sunglasses that he was wearing and the mustache and the hat." *Id.*

Williams, the head bank teller, testified that approximately $7,381.00 was taken. *Id.* at 97. Nave, the owner of a nearby cleaners, testified that at the time of the robbery he witnessed a man in a ball cap, dark gray sweater and black pants run out of the bank, jump a picket fence and run to a truck that "look[ed] very much like" and "appear[ed] to be" Petitioner's truck. (S.C.R. vol.2, 105-09, 144; *see also* vol. 3, 164, 168.) Nave noticed the truck because "it was parked in a spot that nobody normally parks in." (S.C.R. vol.2, 113.)

Gulfport Police Officer Linda Swan gathered descriptions of the robber from those inside the bank, but noted that everybody's perception is a little bit different and it is not unusual to get varying descriptions. *Id.* at 115-19. On cross-examination, Detective Cooper testified that the police received varying descriptions of the robber from witnesses, but noted that the witnesses weren't really paying attention to the robber and that it is not unusual to get different descriptions from witnesses. (S.C.R. vol. 3, 176-81, 183-84.)

On December 11, 2003, the day after the robbery, the SunHerald newspaper published one of the bank surveillance photographs in the newspaper and Karen Powell Ramsey saw the

photograph. (S.C.R. vol. 2, 137; *see also* vol. 3, 163.) Ramsey, the leasing agent at the apartment complex where Petitioner had lived, immediately recognized the robber in the photograph as being Petitioner and called the police. (S.C.R. vol. 2, 137-47.) She noted that, at the time of the robbery, Petitioner's rent was two (2) months past due and his utilities had been disconnected by the power company. *Id.* at 141. Ramsey positively identified Petitioner in the courtroom as being the robber in the photograph and the apartment tenant. *Id.* at 147. Cynthia Curtis, the apartment complex manager, noted that the photograph in the newspaper looked like the tenant, Don Hancock, but she could not identify Petitioner in the courtroom during trial as being the apartment tenant. *Id.* at 143-44. She noted that Petitioner generally wore a mustache, was heavyset and drove a dark truck. *Id.* at 144.

Detective Cooper testified that Petitioner's driver's license photograph, that he obtained from Cynthia Curtis, "generally match[ed]" the bank surveillance photographs. (S.C.R. vol. 3, 167.) Detective Cooper also testified that upon being shown the surveillance photograph by police, Petitioner's own mother identified her son, Petitioner, as the robber. *Id.* at 168, 293, 298. Detective Cooper stated that Petitioner's mother's reaction was of disappointment and that "[s]he sat down in the chair and hung her head pretty low and said, that's my son." *Id.* at 298. Upon taking the stand at trial, Petitioner's mother, Sarah Hancock, testified that she informed the police the robber in the photograph "looked something like [Petitioner]," but that she doesn't recall whether or not she got a close look at the photograph. *Id.* at 226. She also testified that Petitioner sometimes wears a mustache and that he has lost weight because of medical problems. *Id.* at 227. During the defenses' case-in-chief, Petitioner's mother was recalled to the stand and testified that she could not positively identify the robber in the photograph as being her son. *Id.* 292-93. Petitioner's brother, when shown the surveillance photographs, informed Detective

Cooper that the robber resembled his brother and he believed it may be him. *Id.* at 169.

Upon locating Petitioner's truck at a motel, Biloxi Police Officer Paul Cannette stationed himself outside the room where the truck was parked. *Id.* at 189. At that time, Petitioner walked out of the motel room and officer Cannette "recognized him from the bank photograph" and placed him under arrest. *Id.*

Jennifer Taylor, an escort employed by Petitioner, testified that she saw Petitioner after the robbery, on the 10th and 11th of December 2003, for about four (4) hours and that he had "a wad" of money. *Id.* at 214-15. She testified that he paid her $200.00, tipped her another $100.00 and bought her some clothes at the mall. *Id.* at 215-16. On cross-examination, Taylor testified that the first time she saw Petitioner, before the robbery, he had a lot of cash on him. *Id.* at 217-18. Taylor also testified that she had seen Petitioner before the robbery with a mustache and beard but on this occasion he had shaved them off. *Id.* at 216-17.

Matthew Burel, an inmate previously incarcerated with Petitioner, testified that Petitioner had confessed to him to committing the armed robbery. *Id.* at 230. Burel stated that Petitioner informed him that he had robbed a female teller with a gun, that he smudged his fingerprints at the bank, that he had gotten just under $8,000.00, that he had left the gun somewhere between Biloxi and Ocean Springs, and that he was with Jennifer Taylor a/k/a Misty Mars just before he was arrested. *Id.* at 232-34. Burel also stated that on the day of trial Petitioner had shaved and lost weight. *Id.* at 230. Burel noted that Petitioner had informed him that he was losing weight and changing his appearance "to stump the jury." *Id.* at 235. On cross-examination, Burel admitted that Petitioner had shown him some pages of the discovery material on Petitioner's criminal case. *Id.* at 239-40. Defense called Christopher Landry, an inmate previously

incarcerated with both Petitioner and Burel, who testified that Burel and Petitioner had gotten into an argument while incarcerated, and Burel informed Landry that he was going to get "[Petitioner] thrown away," because it would be "his word against [Petitioner's]." *Id.* at 258-63.

Also, Detective Cooper testified that Petitioner had confessed to committing the armed robbery to him on December 16, 2003, and that Petitioner stated that the money found on him when he was arrested was from the armed robbery. *Id.* at 171-72, 224. Under the standard of the miscarriage of justice exception and in light of the testimony and evidence presented at trial establishing Petitioner's guilt of the charge of Armed Robbery, Petitioner has not established that a fundamental miscarriage of justice will result if his claim is not considered on the merits. *See Coleman*, 501 U.S. at 750; *Ward*, 53 F.3d at 108. Accordingly, this Court is precluded from considering Ground Three presented in Petitioner's habeas petition due to his default in the courts of Mississippi.

The Court also notes that Petitioner's claim in Ground Three was essentially that the Mississippi Court of Appeals erred in assessing the evidence in Petitioner's criminal case under each of the grounds raised in the appellate court's review. Petitioner has conceded that his evidentiary claim in Ground Three is encompassed in his ineffective assistance of counsel claims raised in the case *sub judice*. (*See* Rebuttal [10-1] 9.) As such, Petitioner's claim has been addressed by this Court in Grounds Two, Four and Five discussed *supra*. Furthermore though, to the extent that Petitioner's claim in Ground Three could be construed as a sufficiency of the evidence claim, this Court notes that upon review of the record it finds that all of Petitioner's arguments regarding the alleged conflicting testimony were presented to the jury, either on the witness stand or in defense counsel's closing argument. It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Accordingly, a reviewing court should "not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). The Mississippi Court of Appeal's decision that there was sufficient evidence that Petitioner robbed Shelby, a bank teller at Union Planters bank in Gulfport, Mississippi, at gunpoint to support his conviction of armed robbery did not involve an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts in the light of the evidence presented at trial.

## <u>CONCLUSION</u>

Based on the forgoing analysis, this Court finds that the Petitioner's Petition [1-1] for Writ of Habeas Corpus should be denied. In accordance with Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the district Court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___12th___ day of May, 2010.

_s/ John M. Roper, Sr._

UNITED STATES MAGISTRATE JUDGE